# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

FILED
DISTRICT COURT

05 JUL 26  AM II: 11

OF
LAURA A. BRIGGS
CLERK

UNITED STATES
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

        v.

ALANAR, INC.,
GUARDIAN SERVICES, LLC,
FIRST FINANCIAL SERVICES OF SULLIVAN
COUNTY, INC., THE LIBERTY GROUP, INC.,
CHURCHMEN'S INCOME BOND FUND 1,
LLC, CHURCHMEN'S INCOME BOND FUND
2, LLC, CHURCHMEN'S INCOME BOND
FUND 3, LLC, CHURCHMEN'S INCOME
BOND FUND 4, LLC, CHURCHMEN'S
INCOME BOND FUND 6, LLC,
CHURCHMEN'S INCOME BOND FUND 7,
LLC, CHURCHMEN'S INCOME BOND FUND
8, LLC, CHURCHMEN'S INCOME BOND
FUND 11, LLC, CHURCHMEN'S INCOME
BOND FUND 13, LLC, CHURCHMEN'S
INCOME BOND FUND 14, LLC,
CHURCHMEN'S INCOME BOND FUND 15,
LLC, CHURCHMEN'S GROWTH BOND
FUND 1, LLC, CHURCHMEN'S GROWTH
BOND FUND 3, LLC, CHURCHMEN'S
GROWTH BOND FUND 4, LLC,
CHURCHMEN'S GROWTH BOND FUND 6,
LLC, CHURCHMEN'S GROWTH BOND
FUND 7, LLC, CHURCHMEN'S GROWTH
BOND FUND 10, LLC, CHURCHMEN'S
GROWTH BOND FUND 11, LLC,
CHURCHMEN'S GROWTH BOND FUND 12,
LLC, CHURCHMEN'S AGGRESSIVE
INCOME BOND FUND 1, LLC,
CHURCHMEN'S AGGRESSIVE INCOME
BOND FUND 2, LLC, CHURCHMEN'S
AGGRESSIVE INCOME BOND FUND 3, LLC,
CHURCHMEN'S AGGRESSIVE INCOME

Judge     2:05mc 3277

Civil Action No.

**1:05-cv-1102-JDT-TAB**

Magistrate Judge

BOND FUND 4, LLC, REGENT CAPITAL,
LLC, VAUGHN A. REEVES, SR.,
VAUGHN A. REEVES, JR., JONATHAN
CHRISTOPHER REEVES, JOSHUA CRAIG
REEVES,

                            Defendants,

and

CHURCHMEN'S INVESTMENT
CORPORATION, CHURCHMEN'S CAPITAL
GROUP, INC., AIC AVIATION, INC., THE
CITADEL CORPORATION OF SULLIVAN
COUNTY, NORTHSTAR DEVELOPMENT
CORPORATION, NORTHSTAR MORTGAGE
FUNDING, INC.,

                        Relief Defendants.

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission"), states

as follows:

### NATURE OF THE ACTION

1. This case concerns fraud in church bond issuances and a group of bond funds, all

aspects of which have been controlled by four members of the Reeves family: defendants

Vaughn A. Reeves, Sr. ("Vaughn Reeves"), Vaughn A. Reeves, Jr. ("Chip Reeves"), Jonathan

Christopher Reeves ("Chris Reeves") and Joshua Craig Reeves ("Josh Reeves") (Vaughn

Reeves, Chip Reeves, Chris Reeves and Josh Reeves collectively referred to as the "Reeves").

Employing solicitations appealing to the Christian faith of many investors, the Reeves' scheme

has succeeded in raising at least $120 million through church bond issuances and $50 million

through the sale of bond fund units.

2

2. Through their control of Alanar, Inc., the bond funds, the paying agents (Guardian Services, LLC, First Financial Services of Sullivan County, Inc. and The Liberty Group, Inc. (collectively referred to as the "Paying Agents")), and the named relief defendants, the Reeves misused funds meant for the repayment of bondholders and Bond Fund investor proceeds, and misrepresented the Bond Funds' rates of return. By engaging in that conduct, the Reeves have dissipated of investor funds and have put additional investor funds at immediate risk of dissipation. For instance:

   i.   from September 2003 through May 2005, the Reeves and the Paying Agents diverted $8 million worth of church funds meant to repay bondholders into an online brokerage account at E*Trade Financial in the name of Churchmen's Investment Corp. (the E*Trade Account") and used those funds to trade stock and options, loan at least $617,000 to one slow-paying bond issuer, and make unsecured loans to themselves and the relief defendants;

   ii.  when two churches refinanced their Alanar bonds in February 2005 with bank loans, the Paying Agents transferred approximately two-thirds of the refinancing proceeds (approximately $4 million out of $6 million), into the E*Trade Account instead of calling the bonds and paying such funds to bondholders; and

   iii. the Reeves misused Bond Fund investor proceeds in a numerous ways including: causing the Bond Funds to loan more than $535,000 to one another supposedly to meet cash needs, and transferring almost $5 million worth of Bond Fund investor proceeds to the relief defendants.

None of these misuses of bond repayment funds or Bond Fund investor proceeds were disclosed to investors. In addition, the Reeves misrepresented to investors the rates of return for at least four of the bond funds.

3. Recent facts underscore the need for emergency relief. On July 1, 2005, Chip Reeves issued four checks transferring approximately $339,000 out of the E*Trade Account (approximately 8% of the assets in the account) to the bond repayment accounts of three churches. These transfers were made in part to prevent investors in at least two bond issuances from learning that they are entitled to full repayment on their bonds.

4. From September 2003 until April 30, 2005, the Defendants transferred at least $8 million worth of bond repayment funds and at least $ 5 million worth of Bond Fund investor proceeds to relief defendants Churchmen's Investment Corp. ("CIC"), Churchmen's Capital Group, Inc. ("CCG"), AIC Aviation, Inc. ("AIC"), the Citadel Corporation of Sullivan County ("Citadel"), Northstar Mortgage Funding, Inc. ("Northstar Mortgage") and Northstar Development Corp. ("Northstar Development"). The relief defendants were not entitled to receive those funds and do not have a legitimate claim to those funds.

5. By making false and misleading statements to actual and potential investors, the defendants directly and indirectly, have engaged in transactions, acts, practices and courses of business which constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Sections 10(b) and 15(c)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78o(c)(1)] and Rule 10b-5 [17 C.F.R. §240.10b-5]. There is a reasonable likelihood that the defendants will, unless enjoined, continue to engage in the transactions, acts, practices and courses of business set forth in this complaint, and transactions, acts, practices and courses of business of similar purport and object.

6. The Commission brings this action to restrain and enjoin such transactions, acts, practices and courses of business pursuant to Section 20(b) of the Securities Act and Sections 21(d) and 21(e) of the Exchange Act.

## JURISDICTION

7. The Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78aa].

4

8.  The acts, practices, and courses of business constituting the violations alleged herein occurred within the jurisdiction of the United States District Court for the Southern District of Indiana and elsewhere.

9.  Defendants, directly and indirectly, have made, and are making, use of the means and instrumentalities of interstate commerce and of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

## THE DEFENDANTS

10. The Bond Funds ( "Bond Funds") are a group of 24 limited liability companies – Churchmen's Income Bond Fund 1, LLC, Churchmen's Income Bond Fund 2, LLC, Churchmen's Income Bond Fund 3, LLC, Churchmen's Income Bond Fund 4, LLC, Churchmen's Income Bond Fund 6, LLC, Churchmen's Income Bond Fund 7, LLC, Churchmen's Income Bond Fund 8, LLC, Churchmen's Income Bond Fund 11, LLC, Churchmen's Income Bond Fund 13, LLC, Churchmen's Income Bond Fund 14, LLC, Churchmen's Income Bond Fund 15, LLC, Churchmen's Growth Bond Fund 1, LLC, Churchmen's Growth Bond Fund 3, LLC, Churchmen's Growth Bond Fund 4, LLC, Churchmen's Growth Bond Fund 6, LLC, Churchmen's Growth Bond Fund 7, LLC, Churchmen's Growth Bond Fund 10, LLC, Churchmen's Growth Bond Fund 11, LLC, Churchmen's Growth Bond Fund 12, LLC, Churchmen's Aggressive Income Bond Fund 1, LLC, Churchmen's Aggressive Income Bond Fund 2, LLC, Churchmen's Aggressive Income Bond Fund 3, LLC, Churchmen's Aggressive Income Bond Fund 4, LLC and Regent Capital, LLC – the units of which are securities that were sold by Alanar through its registered representatives.  The Bond Funds purport to use investor proceeds primarily to invest in church bonds and other debt securities.

5

11. Alanar, Inc. ("Alanar") is a Georgia corporation headquartered in Sullivan, Indiana and is registered with the Commission as a broker-dealer. Vaughn Reeves is Alanar's CEO.

12. Guardian Services, LLC ("Guardian") is an Indiana limited liability corporation, headquartered in Sullivan, Indiana. Guardian's CEO is Vaughn Reeves, and its board of directors is comprised of him, Chip Reeves, Chris Reeves, and Josh Reeves. Guardian is one of the Paying Agents for the bonds that are sold by Alanar.

13. First Financial Services of Sullivan County, Inc. ("First Financial") is an Indiana corporation headquartered in Sullivan, Indiana. First Financial's CEO is Vaughn Reeves, and its board is composed of him, Chip Reeves, Chris Reeves, and Josh Reeves. First Financial is one of the Paying Agents for the bonds that are sold by Alanar.

14. The Liberty Group, Inc. ("Liberty") is an Indiana corporation headquarted in Sullivan, Indiana. Liberty's CEO is Vaughn Reeves, and its board is composed of him, Chip Reeves, Chris Reeves, and Josh Reeves. Liberty is one of the Paying Agents for the bonds that are sold by Alanar.

15. Vaughn Reeves a resident of Sullivan, Indiana, is the Chairman, CEO and a registered representative of Alanar. As discussed herein, he is an owner of Guardian, Liberty, First Financial, and CIC.

16. Chip Reeves, a resident of Sullivan, Indiana, is the President, Chief Compliance Officer, a director and a registered representative of Alanar and the son of Vaughn Reeves. He is an owner and a director of Guardian, First Financial and Liberty. Chip Reeves also controls CIC's E*Trade options trading account which holds funds from church bond repayment accounts as discussed below.

6

17. Chris Reeves, a resident of Sullivan, Indiana, is a Vice President, director and registered representative of Alanar and the son of Vaughn Reeves. He also is an owner or director of Guardian, Liberty and First Financial. Until just a few days ago, he was the individual responsible for making investment decisions on behalf of the Bond Funds.

18. Josh Reeves, a resident of Sullivan, Indiana, is a director and registered representative of Alanar and the son of Vaughn Reeves. He also is an owner or director of Guardian, Liberty and First Financial, and is the manager and the sole agent of CCG.

## RELIEF DEFENDANTS

19. CIC is an Indiana corporation headquartered in Sullivan, Indiana. Chip Reeves is the president of CIC and he, Vaughn Reeves Sr., Chris Reeves, and Josh Reeves each own 25% of the company. CIC is the nominal owner the E*Trade Account which currently holds $3.5 million in investor assets.

20. CCG is an Indiana corporation headquartered in Sullivan, Indiana. Josh Reeves is CCG's manager and sole agent. CCG issued bonds in December 2002 and February, May, October and November 2004 that were underwritten by Alanar. The Bond Funds transferred investor proceeds to CCG by either loaning the proceeds to CCG or purchasing CCG bonds. CCG then loaned those proceeds to churches.

21. AIC is a Delaware corporation located in Sullivan, Indiana. Vaughn Reeves is its president and sole owner. AIC purports to own computer equipment, cars and airplanes that are leased to Guardian and Alanar. AIC issued bonds underwritten by Alanar in December 2002 and February 2005, some of which were purchased by the Bond Funds.

22. Citadel is a corporation located in Sullivan, Indiana. Josh Reeves is Citadel's principal officer. Citadel invests in church bonds and makes short term loans to churches.

7

Citadel issued bonds underwritten by Alanar in May 2003, some of which were purchased by the Bond Funds.

23. <u>Northstar Development</u> is a corporation located in Sullivan, Indiana, which purports to provide ministry services, development, and management for children's group homes, as well as involvement in construction projects. Its president is Rod Linton. Northstar Development's sole owner is Vaughn Reeves. Northstar issued bonds underwritten by Alanar in May and September 2002 and January 2005, some of which were purchased by the Bond Funds.

24. <u>Northstar Mortgage</u> is a corporation located in Sullivan, Indiana, which purports to facilitate mortgage loans from conventional lenders to church clients of Alanar. Josh Reeves is the president of Northstar Mortgage and its board of directors is comprised of Vaughn, Chip, Chris and Josh Reeves.

THE FACTS

I.     <u>Background on The Offerings</u>

A.     <u>Church Bond Issuances</u>

25.     Over the past 17 years, Alanar has conducted over 700 bond offerings on behalf of churches throughout the United States. The bonds are issued subject to a prospectus that is prepared by Alanar and a trust indenture between the issuer and one of the Paying Agents - First Financial, Guardian or Liberty. Pursuant to the trust indenture, the Paying Agent acts as a pass-through entity. In that role, the Paying Agent is required to place investor proceeds from the sale of bonds in a "bond proceeds acc. unt" for disbursement to the issuer. Likewise, the Paying Agent is required to place funds from issuers for repayment of principal and interest into a "bond repayment account" for payment to bondholders.

8

B.    The Bond Fund Units

26.    Since 2001, Alanar has conducted offerings in 37 bond funds, 24 of which are

defendants in this action. Through these offerings, Alanar has sold over $50 million worth of

Bond Fund units to investors.

27.    There are four types of Bond Funds: income, aggressive income, growth, and

aggressive growth. The Bond Funds are issued subject to private placement memoranda

("PPMs") that were prepared by Alanar. The PPMs indicate that the investment objective of

growth funds is to provide growth of capital, and the investment objective of the income funds is

to maximize income. Regardless of the type of fund, all the Bond Funds state in their PPMs that

they will invest primarily in church bonds. In addition, the income Bond Funds pay out a return

of approximately 7 – 8.5% per year, which is paid monthly. Finally, the funds' PPMs state that

the boards of directors make investment decisions. The boards of directors delegated that

responsibility to Chris Reeves.

II.    Solicitation of Investors

28.    Alanar's and the Reeves' scheme is an affinity fraud. Many investors bought

church bonds and units in the Bond Funds through Alanar because of their desire to help

churches in need of funds. In addition, many of the investors are elderly and some of them

depend on the monthly payments as part of a fixed income.

29.    Until it ceased operations on April 26, 2005, Alanar employed 26 registered

representatives, including Vaughn, Chip, Chris and Josh Reeves, who sold both church bonds

and Bond Fund units ("Alanar representatives"). When selling the bonds, the only document

Alanar representatives provided to potential bond investors was a prospectus for the individual

bond offering. When selling the Bond Fund units, Alanar representatives provided investors

9

with two documents: a document called an indication of interest, and a PPM that contained an operating agreement and a subscription agreement. They did not provide Bond Fund investors with any financial data or reports. Alanar representatives orally represented to investors that Churchmen's Income Bond Funds would pay an annual distribution rate of 7 - 8.5%.

30.    The distribution rate was equivalent to a return rate reflecting only the interest income generated by the securities held by the particular Bond Fund in which the investor had invested.

III.    The Offerings Materials

A.    The Bond Materials

31.    The prospectuses that Alanar representatives provided to bond investors were prepared by Alanar. The prospectuses state that investor funds would be used by the issuer for one or more of the following purposes:  (1) to pay financing costs; (2) to refinance existing debt; (3) to fund various church capital improvement projects; or (4) to fund community projects.  In addition, the bond prospectuses emphasize the fact that the bonds are secured by a mortgage upon the land and property of the church.  Finally, the prospectuses state that the bonds are being issued under a trust indenture between the issuer and a Paying Agent, and contain a summary of the trust indenture.  The summary states that the issuer must make periodic deposits into a bond repayment fund "sufficient to pay the principal and interest as it becomes due and payable on all bonds outstanding."  The summary, however, makes no mention of the permitted uses of the money in the bond repayment fund by the Paying Agent.  The prospectuses state that the trust indenture is available for inspection at the issuer's office and the office of the Paying Agent.

32.    Under the terms of the trust indenture, the Paying Agent is required to deposit all investor proceeds from the sale of bonds in a "Bond Proceeds Account" for disbursement to the

issuer. Likewise, the trust indenture requires the Paying Agent to deposit all payments by the

issuer into a "Bond Repayment Fund" and disburse all payments of principal and interest on the

bonds from that fund. The trust indenture states that money "held in the Bond Repayment Fund

shall be expended solely for the payment of the principal of, premium if any, and interest on the

Bonds as the same mature and become due…." The trust indenture further states that any money

in the bond repayment fund, other than money for the payment of bonds that have matured or

otherwise become payable or for the payment of interest, shall be invested in "Eligible

Securities." The trust indenture further provides that any income generated "from the investment

of … the Bond Repayment Fund held by [the Paying Agent] for the benefit of the issuer" is the

property of the Paying Agent. The trust indenture defines the term "Eligible Securities" as: "(a)

Government Obligations; (b) Insured certificates of deposit or time deposits of banks and savings

and loan associations; (c) Such other investments as the Trustee, acting as a reasonably prudent

investor, may select."

B.    The Bond Fund Materials

33.    The PPMs that Alanar representatives provided to Bond Fund investors also were

prepared by Alanar. With respect to the use of investor proceeds, the PPMs state:

i.    "To achieve our [investment] objective, we will invest in a portfolio of bonds, including church bonds underwritten by Alanar, Inc."

ii.    "The Fund seeks to achieve [its investment] objective by investing in a portfolio of debt securities, including church bonds and U.S. Government securities"; and

iii.    "The Fund will prima ly be investing in church bonds. Church bonds are debt securities issued by churches or religious institutions that are typically used to finance capital projects."

In addition, in a section entitled "Types of Investments and Investment Techniques," the PPMs

specifically enumerate the types of investments that the funds will make: (1) zero-coupon

11

securities; (2) fixed income securities; (3) corporate debt securities; (4) U.S. Government

obligations; and (5) municipal securities. "Fixed income securities" are defined as including

"corporate debt securities (church bonds), U.S. government securities and participating interests

in such securities." "Corporate debt securities" are defined as investment grade securities that

are "long and short term debt obligations issued by companies and/or churches, (such as publicly

issued and privately placed bonds, notes and commercial paper)." "Investment grade" is defined

as securities that are "rated BBB or higher by Standard & Poor's Corporation, or Baa or higher

by Merchant's Investors Services, Inc., or if un-rated, determined by the Adviser to be of

comparable quality."

34. Of the 24 Bond Funds named in this action, the PPMs for Churchmen's Income Bond

Fund 13, LLC, Churchmen's Income Bond Fund 14, LLC, and Churchmen's Income Bond Fund

15, LLC also state: "The Fund will seek to achieve a higher rate of return by investing in Large

Cap Equities … The Fund will invest in Large Cap Blue Chip Companies that are conservative

and have a potential for appreciation."

IV.    The Use of Investor Funds

    A.    Bond Repayment Funds Were Misused in Numerous Ways

35. The Reeves have used funds in church repayment accounts meant for repayment to

bondholders in a number of improper and undisclosed ways including using them to trade equity

options and stock, transferring the funds to themselves and entities they control, and transferring

the funds to churches other than the issuer of the bonds.

36. The Reeves have used bond repayment funds to buy and sell equity options and stock.

From September 4, 2003 through April 30, 2005, the Reeves and the Paying Agents (Liberty,

First Financial and Guardian) have deposited approximately $8 million worth of funds from

12

twelve different church repayment accounts into the E*Trade Account. Chip Reeves has used the funds in the E*Trade Account to trade in equity options and stock. Currently, there is approximately $3.5 million worth of assets remaining in the E*Trade Account, most of which properly belongs in the repayment accounts of nine churches.

37. Two of the nine churches whose repayment funds currently are in the E*Trade Account are Iglesia Cristiana El Buen Samaritano, Inc. ("Iglesia") and Life Worship & Training Center, a/k/a/ New Jerusalem Deliverance Church ("Life Worship"). Iglesia issued bonds underwritten by Alanar in 1996. In February 2005, Iglesia refinanced its church bonds by obtaining a bank loan, thereby effectively calling the bonds. The bank wired the loan proceeds, approximately $3.3 million, directly to Liberty, Iglesia's Paying Agent. Then, contrary to the language of the trust indenture which explicitly states that money received by the Paying Agent for the payment of bonds that have "matured or otherwise become payable" should not be invested, Liberty diverted $2.4 million of those funds into the E*Trade Account where the funds were invested in equity options and stock.

38. Life Worship issued bonds underwritten by Alanar in 1999. In February 2005, Life Worship refinanced its church bonds by obtaining a loan from a credit union, thereby effectively calling the bonds. The credit union wired the loan proceeds of about $2.3 million to First Financial, Life Worship's Paying Agent. Again, contrary to the language of the trust indenture, First Financial diverted $1.8 million of those funds into the E*Trade Account where they were invested in equity options and stock. Life Worship was never told that funds from its repayment account had been transferred into the E*Trade Account.

13

39. Since at least February 2005, the Reeves, Liberty, and First Financial have been paying Iglesia and Life Worship bondholders their promised returns out of the E*Trade Account, despite the fact that, in reality, the bonds have been called.

40. The Reeves also have taken funds out of the E*Trade Account for their own personal use. Specifically, during this time period, CIC made more than $159,000 worth of unsecured loans to Chip and Chris Reeves. In addition, the Reeves and Liberty diverted $296,000 of Iglesia's repayment funds to Northstar Mortgage, and over $300,000 into a CCG bank account.

41. The Reeves also have loaned funds in the E*Trade Account to churches. In late 2004 and early 2005, the Reeves took over $617,000 of bond investor funds out of the E*Trade Account and provided it to the St. Paul Baptist Church in Capitol Heights, Maryland ("St. Paul"), which is not one of the churches whose repayment funds are in the E*Trade Account. The Reeves transferred these funds to St. Paul because it was struggling to make payments on bonds it had previously issued. CIC, the nominal owner of the E*Trade Account, documented this payment as a loan to St. Paul. However, the promissory notes are signed by Joe Craft, who is the president of Guardian.

42. The Reeves also have transferred funds between bond repayment accounts for unrelated churches. On February 22, 2005, the Reeves and Liberty transferred $363,000 from Iglesia's bond repayment account into Life Worship's bond repayment account.

B.    Bond Fund Investor Proceeds Were Misused in Numerous Ways

43. Bond fund investor proceeds also were used in numerous ways that are inconsistent with the Bond Fund PPMs: (1) the Bond Funds have loaned funds to one another, supposedly to meet cash needs, without ever disclosing such loans to Bond Fund investors; (2) the Bond Funds have used Bond Fund investor proceeds to invest in Reeves-controlled entities, and not church

14

bonds, without disclosing such use to investors; (3) the Bond Funds have loaned investor

proceeds to individual churches; (4) all of the investor proceeds in at least one Bond Fund,

Regent Capital, have been used in ways not disclosed to investors, such as loaning the funds to

Reeves-controlled entities; and (5) the Bond Funds transferred investor proceeds into the CIC

E*Trade Account.

44. Twelve of the Bond Funds made loans to other Bond Funds totaling approximately

$535,000 as of May 17, 2005. These loans are undocumented and unsecured and were made to

meet short-term cash needs. Investors were never told that their proceeds would be used in this

manner.

45. The Reeves diverted approximately $5 million worth of Bond Fund investor proceeds

to themselves and entities they control. For instance, the Bond Funds loaned $466,500 to CCG,

$83,390 to CIC, and $37,000 to Citadel. The loans to these entities are undocumented and

unsecured. In addition, the Bond Funds invested $3,336,750 in CCG, $405,400 in AIC,

$319,000 in CIC, $129,000 in Citadel and $141,250 in Northstar Development. The Bond Fund

PPMs did not disclose that investor proceeds could be used to make such investments.

46. As of May 17, 2005, the Bond Funds had loaned more than $355,000 of Bond Fund

investor proceeds to individual churches. Again, investors were never informed that their

proceeds would be used in this manner.

47. Since its inception in May 2001, Regent Capital, LLC ("Regent Capital") one of the

Churchmen's Bond Funds, has raised approximately $454,000 in investor proceeds. As of May

17, 2005, except for the money in its checking account, Regent Capital has improperly used all

of the investor proceeds it raised. Specifically, Regent used more than 67% of the investor funds

it raised to purchase stocks and options through an account at E*Trade Financial in its own

15

name, loaned more than 19% to CIC, and loaned more than 8% to Citadel. The loans are undocumented and unsecured. Again, investors were never informed that their proceeds would be used in this manner.

48. The Reeves diverted approximately $290,000 worth of investor proceeds into the CIC E*Trade Account on October 3, 2003 and another $29,000 on August 18, 2004. As stated above, these proceeds were commingled with other funds in the E*Trade Account which were used to purchase stock and equity options, loaned to the Reeves and their entities, and loaned to churches.

C.     The Bond Funds Misrepresented Their Rates of Return

49. Several of the Bond Funds have misrepresented their rates of return, as a significant portion of the returns paid out to investors have come from new investor proceeds.

50. Alanar representatives informed investors in the Income Bond Funds that the funds would pay a distribution rate of 7-8.5 % per year. Despite those assurances, at least four of the funds failed to invest investor proceeds in a way that would generate the returns required to meet the promised distribution rate.

51. Churchmen's Income Bond Fund Series 1 invested, or retained as cash, only 54% of the $769,000 in new capital contributions it received in 2004. Churchmen's Income Bond Fund Series 2 invested only 46% of $852,000 in new capital contributions it received in 2004. Churchmen's Income Bond Fund Series 7 invested only 24% of $1,198,573 in new capital contributions it received in 2004. Churchmen's Income Bond Fund Series 11 invested only 66% of the $312,000 in new capital contributions it received in 2004. Given that the securities held by the funds collectively paid approximate annual returns of, at most, 7.5 – 9%, the fact that a significant portion of investor proceeds were not invested assures that the funds are not paying

16

investor returns from income generated by the underlying portfolio holdings. Rather, these funds were using new investor contributions to pay returns to existing investors.

52. As discussed above, as of May 2005, the relief defendants CIC, CCG, AIC, Citadel, Northstar Mortgage and Northstar Development had received at least $ 8 million worth of bond repayment proceeds and at least $ 5 million worth of Bond Fund Investor proceeds funds from the Defendants. The relief defendants do not have a legitimate claim to the funds they received from the Defendants.

53. Recent facts underscore the need for emergency relief. On July 1, 2005, Chip Reeves issued four checks transferring approximately $339,000 out of the E*Trade Account (approximately 8% of the assets in the account) to the bond repayment accounts of three churches. Of the $339,000, Chip Reeves transferred $200,000 to the bond repayment account for Iglesia and $131,000 into the bond repayment account of Life Worship, the two churches that had effectively called their bonds by refinancing them in February 2005.

### COUNT I

Violations of Section 17(a) of
the Securities Act [15 U.S.C. § 77q(a)]

[Against Defendants Alanar, the Bond Funds,
Vaughn Reeves, Chip Reeves, Chris Reeves and Josh Reeves]

54. Paragraphs 1 through 53 are realleged and incorporated by reference herein.

55. At the times alleged in this Complaint, Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves and Josh Reeves, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly, have employed devices, schemes and artifices to defraud.

56. In the offer and sale of securities and as part of the scheme to defraud, Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves and Josh Reeves made false and misleading statements of material fact and omitted to state material facts to investors and prospective investors regarding, among other things:  the use of Bond Fund Investor proceeds and Bond Funds' rate of return as more fully described above.

57. Defendants knew or were reckless in not knowing of the facts and circumstances described above.

58. By reason of the activities described above, Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves and Josh Reeves have violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT II

Violations of Section 10(b) of the Exchange
Act [15 U.S.C. §78j(b)] and Rule 10b-5
[17 C.F.R. §240.10b-5] Promulgated Thereunder

[Against Defendants Alanar, the Bond Funds, Vaughn Reeves,
Chip Reeves, Chris Reeves, Josh Reeves, Guardian, Liberty, and First Financial]

59.     Paragraphs 1 through 53 are realleged and incorporated by reference as if set forth fully herein.

60. At the times alleged in the Complaint, Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves, Josh Reeves, Guardian, Liberty, and First Financial, in connection with the purchase and sale of securities described above, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, have employed devices, schemes and artifices to defraud; have made untrue statements of material fact and have omitted to state material facts necessary in order to make the statements made, in light of the

18

circumstances under which they were made, not misleading; and have engaged in acts, practices

and courses of business which have operated and will operate as a fraud and deceit upon

purchasers and sellers of such securities, all as more fully described above.

61. Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves,

Josh Reeves, Guardian, Liberty, and First Financial, knew or were reckless in not knowing of the

activities described above.

62. By reason of the activities above, Defendants Alanar, the Bond Funds, Vaughn

Reeves, Chip Reeves, Chris Reeves, Josh Reeves, Guardian, Liberty, and First Financial,

violated, and unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15

U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

## COUNT III

Violations of Section 15(c)(1)
of the Exchange Act [15 U.S.C. § 78o(c)(1)]

[Against Defendant Alanar]

63. Paragraphs 1 through 53 are realleged and incorporated by reference herein.

64. At the times alleged in this Complaint, Defendant Alanar, in the offer and sale of

securities described above, by the use of the means or instruments of transportation and

communication in interstate commerce and by the use of the mails, directly and indirectly, has

obtained money and property by means of untrue statements of material facts and has omitted to

state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and has engaged in transactions, practices or

courses of business which have operated and will operate as a fraud and deceit upon purchasers

and prospective purchasers, all as more fully described above.

65. Defendant Alanar, based on the Reeves knowledge of the scheme, knew or had reasonable grounds to believe that its statements and omissions described above were untrue or misleading.

66. By reason of the activities described above, Defendant Alanar has violated, and unless enjoined, will continue to violate Section 15(c)(1) of the Exchange Act [15 U.S.C. § 78o(c)(1)].

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Commission respectfully requests that the Court:

I.

Issue findings of fact and conclusions of law that the Defendants committed the alleged violations.

II.

Issue an Order of Permanent Injunction, in a form consistent with Fed. R. Civ. P. 65(d), restraining and enjoining Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves and Josh Reeves and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5].

III.

Issue an Order of Permanent Injunction, in a form consistent with Fed. R. Civ. P. 65(d), restraining and enjoining Guardian, Liberty and First Financial, and their officers, agents,

servants, employees and attorneys, and those persons in active concert or participation with any

of them, who receive actual notice of the order by personal service or otherwise, and each of

them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5

thereunder (17 C.F.R. 240.10b-5].

## IV.

Issue an Order of Permanent Injunction, in a form consistent with Fed. R. Civ. P. 65(d),

restraining and enjoining Alanar and its officers, agents, servants, employees and attorneys, and

those persons in active concert or participation with it, who receive actual notice of the order by

personal service or otherwise, and each of them, from violating Section 15(c)(1) of the Exchange

Act [15 U.S.C. § 78o(c)(1)].

## V.

Order Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves,

Josh Reeves, Guardian, Liberty, First Financial and relief defendants CIC, CCG, AIC, Citadel,

Northstar Development and Northstar Mortgage, to disgorge all ill-gotten gains that they have

received as a result of the acts complained of herein, with prejudgment interest thereon.

## VI.

Order Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves,

Josh Reeves, Guardian, Liberty, and First Financial to pay civil penalties under Section 20(d) of

the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §

78u(d)(3)].

## VII.

Issue orders (a) freezing the assets of Defendants Alanar, the Bond Funds, Vaughn Reeves, Chip Reeves, Chris Reeves, Josh Reeves, Guardian, Liberty, First Financial, and relief defendants CIC, CCG, AIC, Citadel, Northstar Mortgage and Northstar Development, their officers, agents, servants, employees, attorneys and those persons in active concert with them who receive actual notice of the Asset Freeze by personal service or otherwise, (b) requiring Defendants to identify assets and to provide an accounting, (c) granting expedited discovery, (d) prohibiting Defendants from altering or destroying documents and (e) appointing a receiver.

## VIII.

Grant such other and further relief as may be necessary and appropriate.

## IX.

Retain jurisdiction of this action to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

DATED: July 25, 2005

Respectfully submitted,

Asheesh Goel
Cassandra A. Becker

Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
175 West Jackson Boulevard
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

22